IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EXCELERON SOFTWARE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2007-L |
| | § | |
| TGEC COMMUNICATIONS COMPANY, | § | |
| LLC., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion to Remand, filed October 21, 2005.  After careful consideration of the motion, response, briefs, reply, record and applicable law, the court **grants** Plaintiff's Motion to Remand.

**I.  Procedural and Factual Background**

Plaintiff Exceleron Software, Inc. ("Plaintiff" or "Exceleron") initially filed this action in the 14th Judicial District of Dallas County, Texas on August 8, 2005 against Defendants TGEC Communications Company, LLC ("TGEC"), Pacific Centrex Services ("Pacific"), and Devin Semler ("Semler") (collectively, "Defendants").  Exceleron contends that it entered into an agreement with TGEC (the "Access Agreement") to provide TGEC billing software for an initial term of three years. According to Exceleron, soon after the Access Agreement was executed, Pacific purchased TGEC, and Exceleron consented to the transfer of the Access Agreement from TGEC to Pacific based upon representations by Semler (president and chief executive officer of Pacific and TGEC) that he and Pacific would use their best efforts to comply with the terms of the Access Agreement.  Exceleron contends TGEC and Pacific breached the Access Agreement prior to the expiration of its initial term,

**Memorandum Opinion and Order - Page 1**

and that Pacific and Semler fraudulently induced it to consent to the sale of TGEC to Pacific. Exceleron terminated the Access Agreement and accelerated the remaining payments due according to the terms of the Access Agreement.  Exceleron asserts a claim for breach of contract against TGEC and Pacific and one for fraudulent inducement against Pacific and Semler.  Exceleron also asserts a claim for attorney's fees against Defendants pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997).

Defendants contend that they are not liable to Plaintiff on any of its claims and that this court lacks personal jurisdiction over the Defendants in this case.  Defendants also contend that Plaintiff breached the Access Agreement first and that any purported liquidated damages clause is inapplicable and unenforceable.  Defendants further contend that Plaintiff was not fraudulently induced into signing the Access Agreement.  Finally, Defendants contend that Plaintiff is not entitled to an award of attorney's fees.  Defendants removed the state court action to federal court on October 11, 2005.

Exceleron sets forth evidence that Defendants were served on August 15, 2005 with respect to the state law suit.  Defendants do not dispute this evidence, and therefore the court accepts it as true.  On September 28, 2005, Defendants received a demand letter from Plaintiff's counsel stating that damages of at least $230,000 were due as a result of Defendants' alleged breach of the Access Agreement.[1]  From what the court can ascertain from the record, the parties agreed to extend the

---

[1]Although the actual demand letter is not part of the record, the parties agree that a demand letter was sent on this date, stating that the damages allegedly incurred by Exceleron were at least $230,000.

**Memorandum Opinion and Order - Page 2**

time for Defendants to file their answer in state court to October 4, 2005.[2]  Defendants filed no

answer in state court and removed this action on October 11, 2005.

Exceleron contends that the removal of this action was not timely pursuant to 28 U.S.C. §

1446(b) because it was not removed within thirty days of Defendants' receipt of the summons and

complaint.  Defendants contend that the action was timely removed because it was removed within

thirty days after the receipt of an "other paper" (the demand letter) from which they could first

ascertain that the case was removable to federal court.  The issues for the court to decide are whether

Defendants timely removed this action pursuant to 28 U.S.C. § 1446(b) and whether the action

should be remanded to state court.

**II.  Plaintiff's Motion to Remand**

**A.  Applicable Law**

The procedure that a defendant must follow in removing an action from state to federal court

is set forth in 28 U.S.C. § 1446.  This statute provides in relevant part:

> The notice of removal of a civil action or proceeding shall be
> filed within thirty days after the receipt by the defendant, through
> service or otherwise, of a copy of the initial pleading setting forth the
> claim for relief upon which such action or proceeding is based, or
> within thirty days after the service of summons upon the defendant
> if such initial pleading has then been filed in court and is not required
> to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a
> notice of removal may be filed within thirty days after receipt by the
> defendant, through service or otherwise, of a copy of an amended
> pleading, motion, order or other paper from which it may first be
> ascertained that the case is one which is or has become removable,
> except that a case may not be removed on the basis of jurisdiction

---

[2]Exceleron states that there were three extensions, although the record itself does not reflect that three extensions occurred.  In any event, in the final analysis, the extension of time is of no moment, as Defendants do not assert it as a basis that their removal is timely.

**Memorandum Opinion and Order - Page 3**

conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

## B. Analysis

Exceleron takes the position that August 15, 2005, the date Defendants were served with the summons and Plaintiff's Original Petition ("Petition"), started the running of the removal clock. According to Exceleron, Defendants had until September 14, 2005, thirty days from the date of service, to remove the state action to federal court. Defendants, on the other hand, contend that the thirty-day period for removal did not commence to run until they received the demand letter on September 28, 2005 from Exceleron and could first ascertain that the case was removable. Stated another way, Defendants contend that September 28, 2005 was when they could first determine that the amount in controversy, exclusive of interest and costs, exceeded $75,000 and was therefore removable.[3] Defendants thus contend that the thirty days did not run until October 28, 2005.

The time limit for removal of an action depends on which paragraph of section 1446(b) is applicable. The first paragraph of section 1446(b) relates *solely* to removals based on "an initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). The second paragraph, by the plain language of the statute, comes into play *only* if "the case stated by the initial pleading is not removable." *Id.* With respect to an initial pleading, "[t]he time limit in the first paragraph of section 1446(b) is triggered 'only when that pleading

---

[3]A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332(a). The parties do not dispute that diversity of citizenship exists between the parties or that the amount in controversy exceeds the jurisdictional threshold. The only disputed issue is when Defendants were sufficiently put on notice that the amount in controversy exceeded $75,000 to start the running of the removal clock.

*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.' " *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002) (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)) (emphasis in original and footnote omitted).  The court must therefore determine whether the Petition, the initial pleading, affirmatively reveals on its face that the amount in controversy exceeds $75,000.

A cursory review of the Petition readily reveals or discloses that the amount that Exceleron seeks exceeds $75,000, the jurisdictional threshold.  There is nothing indeterminate, nebulous, or vague about the amount of damages sought in the Petition.  Indeed, the Petition does not just "reveal" on its face that the amount Exceleron seeks is greater than $75,000; it *establishes*[4] that Exceleron seeks more than $75,000 against Defendants.  The Petition states unequivocally that the term of the Access Agreement was for three years or until May 1, 2007; that the monthly license fee started at $6,000 and increased by $2,000 after each six-month interval, with the maximum monthly license fee not to exceed $10,000 for the remainder of the duration of the Access Agreement; that Defendants have failed to pay the monthly fee since June 1, 2005 and have been in breach since this date; and that all amounts owed under the Access Agreement are due and payable immediately.  Plaintiff's Original Petition ¶¶ 10-12, 19-20.  Upon review of the Petition, a modicum of effort and a couple of simple mental calculations immediately reveal and *establish* that Exceleron is seeking at least $230,000 ($10,000 per month multiplied by the 23 remaining months under the terms of the Access Agreement).  Even if one were to accept the beginning monthly fee of $6,000 per month (*see* Plaintiff's Original Petition ¶ 11) as the basis for the alleged monthly loss, the amount of damages

---

[4]"Establish" means "to put beyond doubt" or "prove."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 427 (11th ed. 2004).

**Memorandum Opinion and Order - Page 5**

claimed would be $138,000 ($6,000 x 23 months), far greater than the jurisdictional threshold of $75,000.

The Petition sets forth on its face express allegations as to the monetary amount of damages. Since the initial pleading affirmatively reveals and *establishes* on its face that the amount in controversy exceeds $75,000, the thirty-day time limit under the first paragraph of section 1446(b) began to run on August 15, 2005, the date on which Defendants were served with the Petition. The thirty-day time period expired on September 14, 2005. As Defendants did not remove this action until October 11, 2005, the removal is untimely.[5]

In light of arguments made by the parties, the court believes several other matters warrant its attention. The court finds it interesting that Exceleron would use as support for its position a Michigan case, *Mielke v. Allstate Ins. Co.*, 472 F.Supp. 851 (E.D. Mich. 1979), which has been rejected by the Fifth Circuit. *See Chapman*, 969 F.2d at 163. In *Mielke*, the initial pleading did not contain a specific demand or request for damages; however, the plaintiff sent the defendant copies of medical expenses which revealed that he sought damages in excess of the jurisdictional threshold. Because of the initial pleading and the other documents submitted to the defendant, the court in *Mielke* determined that the removal was untimely, as the defendant should have known or ascertained from the original complaint and medical bills and expenses that the amount sought by the plaintiff was in excess of the jurisdictional threshold. *See Mielke*, 472 F.Supp. at 853. In rejecting the holding in *Mielke* and establishing a rule that a pleading affirmatively reveal on its face that the amount sought exceeds the jurisdictional threshold, the Fifth Circuit did so because such a

---

[5]Since the court has determined that the initial pleading affirmatively reveals on its face that the amount Exceleron seeks is in excess of $75,000, the second paragraph of section 1446(b) is of no moment in this case. Accordingly, the court will not address Defendants' arguments related to the receipt of the "other paper" (demand letter).

**Memorandum Opinion and Order - Page 6**

rule "promotes certainty and judicial efficiency by not requiring [a court] to inquire into what a particular defendant may or may not subjectively know." *Chapman*, 969 F.2d at 163.  In adopting this rule, the Fifth Circuit rejected the requirement in *Mielke* that a defendant exercise "due diligence." *Id*. Due diligence, however, is not an issue in this case, as Defendants were not required to do any investigation or research to determine whether the amount sought by Exceleron exceeded $75,000; they only had to read the express allegations of the Petition to know that the amount in controversy exceeded $75,000.

Although *Mielke* is of no assistance to Exceleron, this is of no moment, as both *Chapman* and *Bosky* provide all the legal support necessary to establish that Defendants did not timely remove this case.  *Chapman* and *Bosky*, as previously demonstrated, require that the initial pleading reveal on its face that a case is removable.  For the reasons previously discussed by the court, the Petition satisfies this rule.

Defendants take the position that Exceleron was required to plead a specific allegation that the damages were in excess of the jurisdictional threshold.  This argument takes applicable circuit precedent out of context, constitutes an overly restrictive reading of *Chapman* and *Bosky*, and ignores key provisions of both opinions.  Defendants hang on the following passage from *Chapman*:

> We believe the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth, by adopting a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount.

*Chapman*, 969 F.2d at 163.  This language cannot be read in a vacuum.  If it literally means what Defendants contend, it is wholly inconsistent with the earlier statement of the rule that the initial pleading must *only* affirmatively reveal on its face that the amount sought exceeds the jurisdictional

threshold.  Further, this passage is "sandwiched" between the initial pronouncement of the rule and

the summation of the court's holding in *Chapman*.  As part of its summation, the court reiterated the

requirement that an initial pleading reveal on its face that the amount in controversy exceeds the

jurisdictional threshold, *Chapman*, 969 F.2d at 165; however, the court restated no requirement that

the initial pleading contain a specific allegation that the amount sought exceeds the jurisdictional

threshold.  *Id*.  To avoid inconsistency with the stated rule, the language in *Chapman* requiring a

plaintiff to plead specifically that damages exceed the jurisdictional threshold comes into play only

if the allegations of the initial pleading do not affirmatively reveal or establish that the amount in

controversy exceeds $75,000.

Moreover, the quoted passage on which Defendants rely heavily does not enjoy widespread

application or utility by the Fifth Circuit.  Since the *Chapman* decision in 1992, *Bosky* and three

other cases[6] are the only published Fifth Circuit cases that even discuss or mention *Chapman*.  None

of these three cases makes any mention of the language in *Chapman* that requires a plaintiff to plead

specifically that the amount in controversy exceeds the jurisdictional threshold.  *Bosky*, however,

makes it unequivocally clear that a specific allegation in the initial pleading that the amount in

controversy exceeds the jurisdictional threshold is not required in every instance.

The court finds illustrative and informative language in *Bosky* that eviscerates Defendants'

rigid and draconian interpretation that the initial pleading must contain a specific allegation that the

---

[6]*Addo v. Globe Life and Accident Ins.* Co., 230 F.3d 759, 761 (5th Cir. 2000) (citing *Chapman* to show that the Fifth Circuit had not previously decided whether a post-complaint letter concerning settlement terms constituted an "other paper" within the meaning of 28 U.S.C. § 1446(b)); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) (citing *Chapman* for the proposition that a defendant's subjective knowledge in a removal case under 28 U.S.C. § 1446(b) cannot convert it into a removable action); and *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (reaffirming the "affirmatively reveal" language of *Chapman*).

**Memorandum Opinion and Order - Page 8**

amount sought exceeds the jurisdictional threshold.  Subsequent to the holding in *Chapman*, the Fifth Circuit stated: "We have since held that specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal."  *Bosky*, 288 F.3d at 210 (footnote omitted).  Literal and strict interpretation of *Chapman* simply "does not hold water."  If the Fifth Circuit can hold that "specific damage estimates," "combined with the other unspecified damage claims" can start the running of the removal clock, this court simply cannot fathom why specifically pleaded allegations regarding damages (*not estimates or unspecified damage claims*), set forth in the Petition, that obviously exceed the jurisdictional threshold, do not start the removal clock for Defendants.  A district court should always use a common-sense approach to determine whether it is "facially apparent" that the amount sought exceeds the jurisdictional threshold.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1337 (5th Cir. 1995).  The Petition provides more than sufficient notice to Defendants that the amount sought exceeds $75,000.  The court determines that the allegations in the Petition regarding damages sought are clear and specific, and affirmatively reveal and *establish* on the face of the Petition that the amount in controversy exceeds the jurisdictional threshold.  To hold otherwise would be fatuous, cause an obviously absurd result, and abandon a common-sense approach.  Defendants did not file their notice of removal within thirty days of service of the Petition, and therefore their removal is untimely under section 1446(b).  Since the removal is untimely, this action must be remanded to state court.

### III.  Attorney's Fees

Exceleron requests the court to require "Defendants to pay Exceleron its costs, expenses and attorneys' fees incurred in connection with this improper removal."  Plaintiff's Motion to Remand at 9.  Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  There is no "automatic entitlement to an award of attorney's fees."  *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).  In applying section 1447(c), the court must consider "whether the defendant had objectively reasonable grounds to believe the removal was legally proper."  *Id*. at 293.

The issue of attorney's fees is a close call.  In hindsight and in light of this opinion, one could make a strong argument that the conduct of Defendants was objectively unreasonable; however, there is that part of the *Chapman* opinion which states that the initial pleading must contain a specific allegation that damages exceed the jurisdictional threshold before the removal clock commences to run.  Defendants had a right to rely on this language.  Although the court did not agree with Defendants, it had to "slice some awfully thin sausage" in reaching its conclusion, given the confusing language in *Chapman*.  That a court ultimately disagrees with a party is not a basis to determine that an initial act or strategy is objectively unreasonable.  After consideration of all the circumstances, the court is persuaded that Defendants had objectively reasonable grounds to remove this action to federal court.

**IV.  Conclusion**

For the reasons stated herein, the court determines that Defendants did not timely remove this action to federal court within thirty days as required by 28 U.S.C. § 1446(b).  The court therefore **grants** Plaintiff's Motion to Remand, and **remands** this action to the 14th Judicial District Court, Dallas County, Texas.  The clerk of the court shall effect the remand in accordance with the usual procedure.  As the case is remanded, the court does not consider Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

**It is so ordered** this 23rd day of December, 2005.

Sam A. Lindsay
United States District Judge